STATE of Missouri, Respondent,

v.

Cedric CONLEY, Appellant.

No. 76234.

Supreme Court of. Missouri,
En Banc.

March 22, 1994.

Charles M. Shaw, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Ziegler, Millie Aulbur, Asst. Attys. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Defendant Cedric Conley was originally charged by indictment with fifty-one counts involving sexual abuse of young males. The trial court divided these charges into four groups. The fourth group consisted of charges alleged to have occurred at St. Vincent's Group Home for Boys between June 1988 and October 1990. Defendant was convicted of four counts of sodomy, three counts of sexual assault in the first degree, and one count of attempted sodomy. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer. *Rule 83.03.* Reversed and remanded.

## FACTS

Prior to his arrest in 1990, defendant had been employed in the field of child care for approximately thirteen years. Specifically he was employed at St. Vincent's from June 1988 through October 1990. All of the victims of the alleged offenses were residents at St. Vincent's during part or all of that period.

K.S. was ten or eleven years old when he lived at St. Vincent's, where defendant was his houseparent. K.S. testified that defen-

dant would tell him he loved him and kiss him on the cheek. K.S. also testified that defendant would sometimes touch K.S.'s penis through his clothing as long as a couple of minutes. These occasions occurred while the two were alone talking in the game room or in K.S.'s bedroom. K.S. further testified that on a couple of occasions defendant touched his penis while defendant helped the boy tuck in his shirt. Others were present on these occasions. K.S. testified that defendant threatened to hurt K.S.'s brother if K.S. told. On this evidence the jury convicted the defendant of one count of sodomy and two counts of sexual abuse in the first degree, but defendant was found not guilty of one count of sodomy and three counts of sexual abuse.

J.B. was twelve years old when he lived at St. Vincent's. J.B. testified that defendant often told him he loved him and kissed him on the ears. J.B. testified that on more than ten occasions when he would be alone with defendant in the game room at St. Vincent's, defendant would touch J.B.'s penis. J.B. testified that on these occasions his pants were unzipped and defendant touched his penis directly, but that at other times the touching occurred through J.B.'s clothes. Though charged with three counts of sodomy and one count of sexual abuse in the first degree regarding J.B., the defendant was convicted of only one sodomy charge and one sexual abuse in the first degree charge.

E.B., twelve years of age when he first went to St. Vincent's, also testified that the defendant would kiss him on the neck and sometimes attempt to kiss him on the lips. On one occasion when defendant and E.B. were watching television, defendant held E.B.'s head and tried to force E.B. to place his mouth on defendant's penis. On this evidence defendant was convicted of attempted sodomy but acquitted of sodomy.

P.M. was nine or ten years of age while a resident at St. Vincent's. P.M. testified that defendant kissed him on the face and neck and would on occasion bite his ears. P.M. testified that this activity made him "feel a little weird." P.M. also testified that while he and defendant were wrestling, defendant would often grab P.M.'s penis. P.M. testified that a number of times defendant placed his mouth on P.M.'s penis and the defendant had P.M. place his mouth on defendant's penis several times. On this evidence defendant was convicted of two counts of sodomy and acquitted of two other identical counts.

D.T. was between nine and twelve years of age while a resident of St. Vincent's. He testified defendant would attempt to kiss him on the mouth and that defendant would grab his penis while wrestling. According to D.T., defendant claimed this was some sort of karate hold. D.T. indicated this occurred on a couple of occasions when the defendant would have his hands inside the boy's underwear at the time the touching occurred. Defendant was convicted of one count of sodomy and acquitted of one count of sexual abuse in the first degree alleged to have been committed against D.T.

## I.

Defendant challenges the admission of evidence of acts of sexual abuse which were not the subject of this trial and which involved other alleged victims. That evidence included the testimony of three older boys who claimed to have been sexually abused by defendant while he was a houseparent at another home for boys prior to 1987. The evidence involving uncharged offenses also included the testimony of M.S., a younger boy who was a foster child of defendant's.

With regard to the older boys, they testified to incidents involving a similar progression of sexual activity to that described by the boys at St. Vincent's. That is, defendant would begin by gaining the boy's confidence and befriending the boy. This would progress to hugging and kissing and would graduate to touching the genitals while wrestling or, in some cases, culminate in masturbation or oral sex. The incidents involving the older boys were totally different in one respect. The incidents with older boys included defendant showing them pornographic films while engaging in masturbation and oral sex with the boys.

The fourth boy, M.S., was only twelve years old at the time of trial. He was a foster child of defendant's. He testified that defendant would hug and kiss him and that

defendant would touch him in the pubic area while the two were wrestling. Although M.S. met defendant while M.S. resided at St. Vincent's, the conduct apparently occurred while M.S. lived in defendant's home and was unrelated to the events occurring at St. Vincent's.

Other evidence which defendant challenges includes a tape recorded telephone conversation between defendant and one of the older boys in which defendant seems to admit to having had sex with the older boy but denies any other sexual involvement.[1] Also challenged is a confession. In the confession defendant admits to acts of sodomy with the older boys. However, he claimed that the only time he touched the genitals of any boys at St. Vincent's was when he was wrestling with D.T. and used the "genital hold," a karate technique which is used to make an opponent submit.

■ A most fundamental principle of our system of justice is that an accused may not be found guilty or punished for a crime other than the one on trial. As a result, our courts are rightly suspicious of admitting evidence that a defendant committed uncharged crimes. As a general rule, evidence of other similar crimes is not admissible to show a defendant has a propensity to commit crimes such as the crime charged. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). On the other hand, evidence of uncharged misconduct may be admissible to show motive, intent, identity, absence of mistake or accident, or a common scheme or plan. *Id.*

### A.

■ In this case the jury was instructed that the evidence of uncharged sex acts could be considered insofar as it tended to establish a "common scheme or plan" and for "the purpose of deciding the believability of defendant and the weight to be given to his testimony." The common scheme or plan theory is not a "series of crimes" theory in which the evidence of one crime may be offered to show the defendant's propensity to engage in the crime charged. Rather, the traditional common scheme or plan exception permits evidence of other crimes which are so interrelated to the charged crime that the proof of one tends to establish the other.

■ What *Bernard* attempted to make clear was that where the uncharged offenses or conduct involved different victims at a different and unrelated time and place, the traditional common scheme or plan exception would not apply. However, the Court in *Bernard* went on to recognize a related exception known as the "signature *modus operandi*/corroboration exception." That exception, similar to the identity exception, authorizes evidence of an uncharged crime if the offenses are nearly identical and their methodology so unusual and distinctive that they amount to a signature of the defendant involved in both crimes. Here there are similarities in the progression of defendant's conduct toward his victims in the charged and uncharged crimes. However, in this case there was nothing so unusual about the uncharged acts as to cause them to fall within the signature *modus operandi* exception, which permits admission of a very limited class of evidence to corroborate a victim's story. On the basis of the erroneous instruction telling the jury that they could consider the evidence as part of a "common scheme or plan," this case must be reversed.

### B.

Here the state does not argue that the evidence of uncharged crimes was admissible under the "common scheme or plan" exception. The argument here is that all the uncharged conduct was admissible under the "intent" exception. The state points out that all offenses charged in this case require that the jury find that the sexual conduct, or deviate sexual intercourse, occurred "for the purpose of arousal or gratifying sexual desire." *§ 566.010(2) and (3), § 566.060.3, § 566.100.1(2)*, RSMo 1986; *State v. Fields*,

---

1. The conversation was between defendant and C.S.S. In the conversation defendant told C.S.S. he "never did anything closely related to what happened" between C.S.S. and defendant with any other child. The transcript of the conversation was offered during the state's case and thus could not have been relevant for purposes of impeaching defendant, who had not, at that point, testified.

739 S.W.2d 700, 704 (Mo. banc 1987). The state claims that the uncharged conduct proves that when the alleged conduct in this case occurred, defendant acted for the purpose of gratifying sexual desire. If the state's argument is correct, in any case having a *mens rea* element, prior similar crimes may be admitted to establish that issue. But that is not the law.

In order for intent or the absence of mistake or accident to serve as the basis for admission of evidence of similar uncharged crimes, it is necessary that those be legitimate issues in the case. *State v. Atkinson*, 293 S.W.2d 941, 943 (Mo.1956). When there is direct evidence that the defendant committed the illicit act, the proof of the act ordinarily gives rise to an inference of the necessary *mens rea*. No other evidence is required to establish that element of the case unless the state has some reason to believe that the defendant will make intent or mistake or accident an issue in the case. *People v. Woltz*, 228 Ill.App.3d 670, 170 Ill.Dec. 502, 505, 592 N.E.2d 1182, 1185 (1992); *Thomas v. State*, 612 N.E.2d 604, 608 (Ind.App.1993); *State v. Nunn*, 244 Kan. 207, 768 P.2d 268, 273–74 (1989); *People v. Leo*, 188 Mich.App. 417, 470 N.W.2d 423, 426 (1991). Where the defendant's intent is not a real issue in the case, offering evidence of other crimes to establish that element of the state's case is unnecessary. Thus, the probative value of such evidence is far outweighed by its prejudicial effect. *Bernard*, 849 S.W.2d at 13.

Of the charges to be retried, four are sodomy charges, one is an attempted sodomy charge, and three are sexual assault charges. Here there was direct evidence of the sodomy and attempted sodomy charges. The defendant did not attempt to make an issue of intent or mistake regarding those charges except as to D.T. Defendant denied any act of sodomy toward any of the boys at St. Vincent's but admitted using the "genital hold" on D.T. while wrestling. Because defendant made an issue of his intent as to his touching of D.T. while wrestling, evidence of the use of the "genital hold" on M.S. or other older boys while wrestling is admissible as to that charge. It is at least arguable that the more often defendant used that specific wrestling technique on boys while wrestling, the more likely that wrestling was a ruse to advance the purpose of sexual gratification. However, testimony of other uncharged sexual conduct towards the older boys was unrelated to wrestling and, therefore, inadmissible to establish intent. On retrial the instructions should be modified to indicate that the evidence of the uncharged incidents of sexual contact while wrestling may be considered on the issue of intent to commit sodomy only against D.T. The testimony regarding the more explicit uncharged acts of sodomy toward the older boys should not have been admitted by the trial court for any purpose. Similarly, the portions of the confession and the transcript of the telephone conversation admitting sexual contact with the older boys other than while wrestling should not have been admitted.[2]

The victims of the three remaining sexual assault charges are K.S. and J.B. Defendant specifically denied any wrestling with K.S. or J.B. as well as denying that he committed any act of a sexual nature toward said boys, although defendant did admit to assisting K.S. with tucking in his shirt. Neither K.S. nor J.B. indicated that the sexual assaults against them occurred while they were wrestling with defendant. Because the incidents involving K.S. and J.B. were totally unrelated to the sexual conduct toward M.S. and the older boys, the uncharged conduct is irrelevant to the charges involving K.S. and J.B. The evidence of uncharged offenses is inadmissible as to those charges.

## C.

The state argues that the admission of evidence of uncharged sexual misconduct, if improper, was harmless error. The state claims that because there were allegedly six different witnesses claiming sexual abuse which was charged, the additional evidence of sexual misconduct was harmlessly cumulative. This is clearly not the case. All of the

---

**2.** This opinion should not be read to foreclose the possibility that if the confession or transcript of the telephone conversation become relevant for some purpose not discussed here, such as impeaching of defendant, they may be admissible.

witnesses who were victims of the crimes charged in this case were very young. None was older than fourteen at the time of trial. Their testimony was somewhat vague and undetailed. By contrast, the testimony of the older boys regarding the pornographic movies, the masturbation and oral sex was very detailed and explicit. That testimony was highly prejudicial.

## II.

Defendant claims the trial court erred in overruling his motion to sever the charges against him. The record reflects that the defendant moved to try the charges regarding each of the victims separately. The state responded by seeking to consolidate three separate indictments containing a total of fifty-one charges into a single case. The trial court then divided the cases into four groups. The fourth group includes the counts alleged to have occurred at St. Vincent's Home between June 1988 and October 1990. Defendant claims that he was substantially prejudiced by trying these cases together because the testimony of individual victims tended to be confused with evidence given by other individual victims. Defendant argues that the jury would have trouble distinguishing the evidence and applying the law intelligently as to each offense involving each victim.

Severance of jointly charged offenses is not mandated merely because evidence relating to one count would not be admissible in the trial of a second count if the two were tried separately. Where a motion for severance is filed, a party must show substantial prejudice and the court must find the existence of bias or discrimination against the party that requires separate trials of the offenses. *Rule 24.07.* The rule regulating joinder of offenses provides:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

*Rule 23.05.* Here the offenses charged are all illicit sexual conduct toward minors. The specific offenses joined by the state occurred during a two-year time frame at a specific location. This is sufficient to meet the preliminary requirement of the rule that authorizes joinder of offenses "of the same or similar character." Thus joinder is proper under the rule. The only question for appellate review is whether the trial court abused its discretion in denying the request for separate trials.

Severance is a matter *within the sound discretion of the trial court* directed toward achieving a fair determination of the defendant's guilt or innocence of each offense charged. The court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *The court remains under a continuing duty during trial to counter prejudice and order severance if necessary to achieve the fair result intended....* (Emphasis added).

*State v. McCrary,* 621 S.W.2d 266, 272 (Mo. banc 1981), quoting *State v. Duren,* 556 S.W.2d 11, 20 (Mo. banc 1977), *rev'd on other grounds sub nom. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Applying the *McCrary* criteria here, the counts involved were not complex. The acts occurred during a specific time period and at a particular location. Testimony from each of the victims involved was brief and uncomplicated. Nothing in the record indicates that a properly instructed jury could not keep separate what was relevant as to each victim and as to each count regarding those victims. We find no abuse of discretion in this regard.

A relevant factor in the determination of prejudice is whether evidence of separate crimes would have been inadmissible propensity evidence had the two crimes not been joined. However, even where the evidence would not be admissible if the charges are tried separately, any prejudice may be overcome where the evidence with regard to each crime is sufficiently simple and distinct to mitigate the risks of joinder. *United States v. Halper,* 590 F.2d 422, 431

(2nd Cir.1978). Such questions of severance are left to the sound discretion of the trial court.

### III. CONCLUSION

Other issues were raised. However, because the issues discussed are dispositive of this appeal, they need not be reached. The judgment on each of the eight counts is reversed and the case is remanded for new trial.

All concur.