**STATE of Missouri, Respondent,**

v.

**Cedric CONLEY, Appellant.**

No. 69457.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 28, 1997.

Charles M. Shaw, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

Before RHODES RUSSELL, P.J., and SIMON and KAROHL, JJ.

PER CURIAM.

Cedric Conley ("defendant") was convicted by a jury of six counts of deviate sexual assault in the first degree, § 566.070, RSMo 1994[1], three counts of deviate sexual assault in the second degree, § 566.80, one count of sexual abuse in the first degree, § 566.100, and one count of attempt to commit the offense of sexual abuse in the first degree, § 564.011. In October 1990, two boys implicated defendant with complaints of abuse that occurred in the mid 1980s, some before April 11, 1984. Defendant was sentenced to consecutive prison terms totaling thirty-five years, six months, and thirty days. Defendant appeals the judgments.

Defendant raises five points of error. In his first two points, he contends that the trial court erred in admitting certain evidence which he claims was inadmissible evidence of uncharged crimes and which was barred by § 556.036, RSMo 1978 Supp. In his third point, defendant claims the trial court abused its discretion in sending four exhibits to the jury during its deliberations because the exhibits were impermissible evidence of uncharged and acquitted crimes. In his fourth point, defendant argues the court abused its discretion in prohibiting him from asking a witness about the amount of damages the witness was seeking in a related civil lawsuit. In his last point, defendant contends the trial court erred in prohibiting him from asking a witness whether he had been expelled from

high school for using drugs. We reverse and remand for a new trial.

## BACKGROUND

We review the evidence in the light most favorable to the verdicts and the factual issues. Defendant worked as a child care counselor for approximately thirteen years. Defendant worked at General Protestant Children's Home ("General Protestant"), a residential group home for children, from November of 1983 until April 1986. He later worked as a child counselor at St. Vincent's Children's Home (St.Vincent's) from 1987 until October 1990.

On October 19, 1990, two boys, C.C. and S.E. went to the police station and spoke with Detective Randall Combs. Both boys told Detective Combs that defendant had sexually abused them while they resided at General Protestant during the mid 1980's. The police asked C.C. to call the defendant in an attempt to elicit incriminating statements while the telephone call was audiotaped.

During the phone conversation, C.C. told defendant that he was concerned about getting AIDS from the sexual conduct that occurred between defendant and himself. Defendant told C.C. not to worry because he had been tested for those types of diseases. C.C. told defendant that he felt that he had been violated by him. C.C. then asked defendant to promise to never to do what he did to him to any other child. Defendant responded that he had been careful since he left General Protestant about what "lines he crossed" with other children. C.C. asked defendant whether he had ever had sex with any other kids other than C.C. Defendant said he "never did anything at all even closely related to what happened to us with any other person in my life."

After the audiotaped phone call, Detective Combs went to St. Vincent's where defendant was then working and informed him of C.C.'s and S.E.'s allegations of sexual abuse. Detective Combs asked defendant to accompany him to the police station to discuss the boy's charges. Defendant was explained his *Miranda* rights, and he signed a form waiving

---

**1.** All citations are to the 1994 Revised Statutes of Missouri unless otherwise indicated.

his rights. Detective Combs questioned defendant regarding the allegations of sexual abuse. Defendant told Detective Combs that he had oral sex with C.C. on several occasions and had masturbated S.E. at least once. Detective Combs asked defendant whether he should speak to any other children regarding sexual abuse. Defendant told Detective Combs to speak with P.M., E.B., M.J., and C.G. After three hours of questioning, Detective Combs requested that defendant make a tape-recorded statement regarding the boy's allegations and the names of the other boys defendant told Detective Combs to talk to.

Following the interview, defendant was arrested and booked. After defendant's arrest, the police interviewed approximately thirty children from General Protestant and St. Vincent's regarding possible sexual abuse by defendant. In October and November 1990, defendant was charged by three indictments with fifty-one counts involving sexual abuse of young males. The fifty-one counts were later divided and consolidated into four groups for purposes of trial.[2]

In April 1992, trial commenced on the fourth group. The counts in this group involved charges of alleged sexual abuse that occurred at St. Vincent's. Defendant was convicted of four counts of sodomy, one count of attempted sodomy and three counts of sexual abuse in the first degree.

On appeal, the Missouri Supreme Court reversed the judgment and remanded for a new trial. *State v. Conley,* 873 S.W.2d 233 (Mo. banc 1994). The court held that the admission of evidence of acts of sexual abuse which were not the subject of the trial was prejudicial error.

For purposes of his second trial, defendant was charged with only thirty-five of the original fifty-one counts. The thirty-five counts involved 14 alleged victims who resided at either General Protestant or St. Vincent's during the 1980's.

The second trial commenced on September 5, 1995, in St. Louis County Circuit Court.

Ten boys who had allegedly been sexually abused by defendant testified for the State. Detective Combs also testified on behalf of the State.

C.C., 23 years old at the time of the trial, testified that he moved to General Protestant at the age of twelve. C.C. lived at General Protestant from July 25, 1982 to August 18, 1986. After C.C. had been living at General Protestant for about one year, defendant began working there as a house parent. C.C. testified that on defendant's first night on the job, defendant came to his room and began rubbing C.C.'s stomach. Following this incident, C.C. testified that he and defendant engaged in oral sex and masturbation over a period of three months.

C.C. testified that he later reported the abuse to a supervisor at General Protestant. C.C. further testified that two years later he and defendant signed a letter describing their sexual activities. In the letter, defendant and C.C. admitted that they had only kissed on the lips and french kissed. This letter was admitted into evidence as State's Exhibit 2 over defendant's objection.

At the close of State's evidence, defendant filed a Motion for Judgment of Acquittal renewing his objection that the counts related to C.C. were barred by the applicable statute of limitations. The trial court granted defendant's motion.

S.E., 26 years old at the time of the trial, began living at General Protestant in 1983 at the age of 14. S.E. testified that he lived at General Protestant approximately one year before defendant began working there. S.E. testified that defendant would show him pornographic magazines and videos. According to S.E., defendant once asked him to suck his penis but S.E. refused. On another occasion, S.E. said that defendant asked him to masturbate while watching a pornographic movie. S.E. testified that defendant grabbed his penis while he masturbated. Based upon this evidence, defendant was convicted of one count of deviate sexual assault in the first

---

**2.** The counts were divided and consolidated into the following groups according to the time frame and location of the alleged sexual abuse: 1) General Protestant; 2) defendant's residence; 3)

St. Vincent's from January 1987 to May 1988; and 4) St. Vincent's from June 1988 to October 1990.

degree and one count of deviate sexual assault in the second degree.

J.C., 19 years old at the time of trial, lived at St. Vincent's for two years beginning in 1988 when he was 12 years old. J.C. testified that defendant would make him rub defendant's back and suck his thumb. Defendant was acquitted of these charges at the close of the State's case due to insufficient evidence.

M.S., 19 years old at the time of trial, testified that he lived at St. Vincent's for three years beginning at the age of 9 or 10. M.S. testified that while he resided at St. Vincent's defendant would come to his room at night and rub his chest and touch his penis. M.S. also testified that he lived with defendant for two years as a foster child. While living with defendant, M.S. testified that defendant touched his penis and tried to make him ejaculate. On this evidence defendant was convicted of five counts of sexual assault in the first degree.

J.B., 17 years old at the time of trial, resided at St. Vincent's beginning in 1989 when he was 11 years old. J.B. testified that on more than ten occasions when he was alone in defendant's room or in the game room at St. Vincent's, defendant would touch J.B.'s penis. Based on this evidence, defendant was found not guilty of one count of sodomy and one count of sexual abuse in the first degree.

J.D., 18 years old at the time of trial, lived at St. Vincent's from 1986 to 1988 beginning at the age of ten. J.D. testified that defendant forced him to perform oral sex on him in the game room. J.D. further testified that defendant forced him to perform oral sex on defendant shortly before J.D. moved out of St. Vincent's. On this evidence, defendant was found not guilty of one count of sodomy.

T.S., 19 years old at the time of trial, began residing at St. Vincent's in 1980 at the age of four. T.S. testified that after living at St. Vincent's for approximately five or six years defendant came into his bedroom and touched his chest, stomach and mid-section. While rubbing T.S.'s mid-section, defendant's arm brushed against T.S.'s penis. T.S. further testified that defendant attempted to kiss him on the mouth but T.S. pushed him away. Defendant was acquitted of one count of sexual abuse in the first degree against T.S. at the close of the State's case due to insufficient evidence.

R.T., 24 years old at the time of trial, lived at General Protestant from 1985 to 1986. R.T. was approximately fifteen years old when he first arrived at General Protestant. R.T. testified that defendant started making sexual advances toward him after he resided at the home for a month. According to R.T., the advances began with kisses and escalated to defendant touching his penis on the outer part of his clothing. R.T. further testified that on another occasion defendant asked him to masturbate, and when R.T. refused, defendant threatened to kill him. Based on this evidence, the jury found defendant guilty of two counts of deviate sexual assault in the second degree.

K.H., 16 years old at the time of trial, lived at St. Vincent's for four years beginning in 1990. K.H. was approximately eleven years old when he began residing at St. Vincent's. K.H. testified that defendant came into the bathroom shortly after K.H. had taken a bath and touched his genitals. K.H. further testified that defendant once tried to put K.H.'s head near defendant's genitals. On another occasion, K.H. said that defendant unbuttoned K.H.'s pants and asked K.H. if he would "let him do it." Based on this evidence, the jury convicted defendant of one count of attempted sexual abuse in the first degree and one count of sexual abuse in the first degree.

C.G., 23 years old at the time of trial, lived at General Protestant beginning in 1983 or 1984. C.G. was twelve or thirteen years old when he first began living at General Protestant. C.G. testified that defendant was a house parent at General Protestant when he resided there. According to C.G., his relationship with defendant escalated from kissing on the lips to masturbation and performing oral sex upon each other. C.G. testified that he lived with defendant as a foster child for approximately two years and that he eventually left defendant's residence due to sexual abuse. No counts were pending

against defendant at the second trial for the alleged sexual abuse against C.G.

At the close of State's evidence, defendant filed a Motion for Judgment of Acquittal. The trial court granted defendant's Motion for Judgment of Acquittal as to 20 of the 35 counts ruling that the statute of limitations had run as to five counts and that there was insufficient evidence to support the other fifteen counts. Fifteen counts, involving six alleged victims, remained.

Defendant testified on his own behalf. Defendant denied having any sexual contact with the boys he cared for at General Protestant or St. Vincent's. He testified that he often hugged the boys and occasionally kissed the boys on the cheek to show them that he cared. Defendant testified that he did talk to Detective Combs but that he only confessed to protect the welfare of the boys. Defendant implied that the publicity of the case might drive some of the boys to suicide.

At the close of the evidence, instructions, and closing arguments, the jury found defendant guilty on eleven of the remaining fifteen counts. The trial court denied defendant's posttrial motions and entered judgment in accordance with the jury's verdicts. This appeal now follows.

In his first three points on appeal, defendant argues that the trial court erred in admitting several items of evidence of uncharged misconduct. Specifically, defendant contends the trial court erred in: 1) permitting Detective Combs to testify about his confession; 2) playing the taped confession for the jury; and 3) allowing cross-examination of defendant about the confession because the confession contained evidence of uncharged sexual misconduct. Defendant also argues that the trial court erred in allowing the State to cross-examine him about C.C., the letter between him and C.C., and the taped telephone conversation between him and C.C. after he was acquitted of all charges relating to C.C. He contends that since he was acquitted of the charges relating to C.C., introducing evidence after the acquittal was tantamount to introducing evidence of uncharged sexual misconduct.

The State, however, contends that the evidence was admissible pursuant to § 566.025 RSMo 1994, or was admissible to show a complete and coherent picture of the charged crimes. The State also asserts that even if it was error in admitting the evidence, it was harmless in light of the overwhelming evidence against the defendant.

With regards to defendant's confession, defendant objected to the introduction of the taped confession and Detective Combs' testimony about the confession as evidence of uncharged sexual misconduct involving victims other than those for whom he was on trial for allegedly abusing. He requested a mistrial or alternatively, an order to redact the tape so that only statements connecting defendant with counts for which he was charged could be admitted. This objection was overruled.

The taped confession contained an admission that defendant engaged in masturbation and oral sex with C.C. and S.E. It also included Detective Comb's questioning whether defendant should speak with any other children regarding sexual abuse and defendant's answer that Detective Combs should speak to P.M., E.B., M.J., C.G., and M.S.

Defendant told Detective Combs that M.J. was a fourteen to fifteen year old boy whom he masturbated while watching a X-rated movie. Defendant confessed to masturbating M.J. two to three times in 1984 or 1985. Defendant also said he performed oral sex upon C.G., a twelve or thirteen year old boy who resided at General Protestant. Defendant further admitted using a "genital hold" on M.S., P.M., and E.B. while wrestling.

■ Defendant contends that the introduction of the confession constitutes evidence of uncharged sexual misconduct because defendant was not charged with sexually abusing M.J. In addition, defendant argues that although he was charged with sexual misconduct as to P.M. and E.B., the State presented no evidence that defendant had sexually abused them, and he was later acquitted of the charges at the close of State's evidence. Defendant argues that when the trial court allowed this evidence to be presented to the jury after his acquittal, it was tantamount to

presenting evidence of uncharged misconduct.

Generally, evidence of uncharged crimes or acts is not admissible to show that the defendant has a propensity to commit crimes as the crime charged. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Although a defendant's propensity to commit a crime is logically relevant, it is not legally relevant because the prejudicial effect of such evidence outweighs the probative value of the evidence. *State v. Dudley,* 912 S.W.2d 525, 528 (Mo.App.1995). Thus, evidence of uncharged misconduct is "not admissible on the theory that, if a person will commit one offense, he will commit another." *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992)(quoting *State v. Spray,* 174 Mo. 569, 74 S.W. 846, 851 (1903)). Allowing evidence of recent misconduct by the defendant with a child of the same sex as the victim may encourage the jury to convict the defendant because of his propensity to commit such crimes without considering whether he is guilty of the crime charged. *Bernard,* 849 S.W.2d at 16, relying on Imwinkelreid, *Uncharged Misconduct Evidence,* § 4.16 (1990).

Exceptions, however, do exist for evidence that is both logically and legally relevant. *Sladek,* 835 S.W.2d at 311. Evidence of uncharged misconduct is admissible to establish: 1) motive; 2) intent; 3) absence of mistake; 4) common scheme or plan; 5) identity; and 6) signature/modus operandi/corroboration. *Bernard,* 849 S.W.2d at 13–18.

After *State v. Bernard,* the Missouri legislature enacted § 566.025. This statute permits evidence of uncharged misconduct to show the propensity of the defendant to commit sexual misconduct if specified circumstances are present. *State v. Sexton,* 890 S.W.2d 389, 391 (Mo.App.1995). Section 566.025 provides that:

> In prosecutions under chapter 566 or 568 involving a victim under fourteen years of age, whether or not age is an element of the crime for which the defendant is on trial, evidence that the defendant had committed other charged or uncharged crimes involving victims under fourteen years of age shall be admissible for the purpose of

showing the propensity of the defendant to commit the crime or crimes with which he is charged, provided that such evidence involves acts that occurred *within ten years before or after* the act or acts for which the defendant is being tried.

We address the portion of the confession which clearly was evidence of uncharged sexual misconduct. The evidence regarding M.J. was evidence of uncharged sexual misconduct.

Here, the State does not argue that the evidence of uncharged sexual misconduct was admissible under the *Bernard* exceptions. Instead, it contends the evidence regarding M.J. was admissible under § 566.025, or alternatively, it was admissible to show a complete and coherent picture of the crimes charged.

The evidence regarding M.J. was not admissible pursuant to § 566.025. The first requirement of this statute is that the victim or victims for which defendant is being prosecuted must be under the age of fourteen. Here, two of the victims that defendant was ultimately convicted for were fourteen when defendant sexually abused them. Secondly, under § 566.025, only evidence involving victims under the age of fourteen is admissible to show the propensity of the defendant to commit the crimes with which he is charged. The only reference to M.J.'s age was defendant's statement that M.J. was fourteen to fifteen when he sexually abused M.J. Since the evidence regarding M.J. did not involve a victim under the age of fourteen, the evidence was inadmissible under the statute to show defendant's propensity to commit the crimes against any of the victims with which he was charged.

◼ The State also argues that even if the evidence was inadmissible under § 566.025, the evidence was admissible to show a complete and coherent picture of the crimes charged. Evidence of uncharged crimes which are part of the circumstances or the sequence of events surrounding the charged offense is admissible to present a complete and coherent picture of the events that transpired. *State v. Harris,* 870 S.W.2d 798, 810

(Mo. banc), *cert denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

In this case, the evidence of sexual misconduct regarding M.J. was not part of the *res gestae* of the crimes for which defendant was charged. The sexual misconduct evidence regarding M.J. was not so intertwined or part of a continuous sequence of events connected with the crimes for which defendant was being tried. *Cf. State v. Weatherspoon,* 728 S.W.2d 267, 273 (Mo.App.1987). The evidence was not admissible under this theory.

■ The trial court also erred in admitting evidence relating to C.C. after defendant had been acquitted of those charges. Prior to trial, defendant filed a motion to dismiss the charges related to C.C., because discovery clearly indicated that the alleged acts occurred before April 11, 1984. Defendant argued that the counts related to C.C. were barred by the statute of limitations pursuant to § 556.036, RSMo Supp.1978. Defendant was not acquitted of the five counts of deviate sexual assault relating to C.C. until after the close of State's evidence. The trial court's granting of defendant's motion for judgment of acquittal, however, came too late to protect defendant's rights.

During jury deliberations, the trial court acquiesced to the jury's request to look at the trial exhibits. Exhibit 2, a copy of the letter between C.C. and defendant, was given to the jury. Defendant objected to the court sending the letter to the jury because defendant had been acquitted of all the charges related to C.C. The court overruled defendant's objection stating that Exhibit 2 could go to the jury pursuant to § 566.025. In addition, the trial court replayed defendant's confession to the jury over defendant's objection.

The trial court erred in sending the exhibits to the jury because the exhibits contained evidence of sexual misconduct for which defendant was no longer on trial. Evidence of other crimes, unrelated to the ones for which defendant is presently standing trial, violates defendant's right to be tried only for the offense for which he was indicted. *State v. Wright,* 582 S.W.2d 275, 277 (Mo. banc 1979). Defendant was no longer standing trial on

charges related to C.C. because he had been acquitted of those charges at the close of State's evidence.

The trial court erred in allowing evidence related to C.C. to go to the jury during deliberation pursuant to § 566.025 because some of the victims which defendant was on trial for were not under the age of fourteen. Although C.C. was under the age of fourteen when the alleged sexual misconduct took place, this evidence was only admissible under § 566.025 to show defendant's propensity to commit the crimes with which he was charged. Further, § 566.025 requires that the victims for which he was charged must be under the age of fourteen. Two of the victims defendant was ultimately convicted for sexually abusing were fourteen or older. Thus, the evidence relating to C.C. was inadmissible as to those two victims.

■ The trial court erred in admitting the evidence of uncharged sexual misconduct. The question is whether the error was sufficiently prejudicial to require a new trial. "The presumption of prejudice from the erroneous admission of evidence may be overcome where the evidence of guilt is so overwhelming as to eliminate any reasonable doubt that the defendant would have been found guilty without the erroneously admitted evidence." *State v. Troupe,* 863 S.W.2d 633, 636 (Mo.App.1993). Error in the admission of evidence will be declared not prejudicial only if we can "declare a belief that it was harmless beyond a reasonable doubt." *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

In *Troupe,* we found that although the admission of evidence of defendant's prior conviction was error, it was not prejudicial nor did it influence the jury. We noted 1) the victim's testimony was corroborated by other witnesses; 2) medical evidence corroborated the charged crime; 3) defendant's actions strongly demonstrated consciousness of guilt; 4) the State's evidence was undisputed; and 5) the jury did not assess the punishment. 863 S.W.2d at 636; *See Also,*

*State v. Jones,* 914 S.W.2d 852, 858 (Mo.App. 1996).

Here, there is no basis to conclude that the admission of the evidence of uncharged sexual misconduct was not prejudicial. The victims' testimony was not corroborated by independent witnesses. There was no medical or other physical evidence presented at the trial to corroborate the charged crimes. And, unlike *Troupe,* the jury assessed defendant's punishment.

Finally, and significantly, the Missouri Supreme Court in *Conley* held that the portions of the confession admitting sexual contact with the older boys should not have been admitted since there was direct evidence of the crimes charged. 873 S.W.2d at 237. In *Conley,* the Missouri Supreme Court rejected the State's argument that even if the evidence of uncharged sexual misconduct was error, it was harmless. The State argued that because there were allegedly several different witnesses claiming sexual abuse which was charged, the additional evidence of sexual misconduct was harmless. *Id.* The Missouri Supreme Court, however, rejected the argument and found the admission of the uncharged misconduct was prejudicial. *Id.* at 236–37.

Where evidence of other crimes is unnecessary because motive, intent, identity, or absence of mistake were not issues, the probative value of such evidence is far outweighed by its prejudicial effect. *Conley,* 873 S.W.2d at 237. *See Bernard,* 849 S.W.2d at 13. "Evidence of other crimes is highly prejudicial and should be received only when there is strict necessity." *State v. Collins,* 669 S.W.2d 933, 936 (Mo. banc 1984). Since the victims testified about the sexual misconduct involving them, the uncharged sexual misconduct evidence was cumulative, unnecessary, and prejudicial. *Jones,* 914 S.W.2d at 859.

Because the evidence was inadmissible under either § 566.025 or the exceptions delineated in *Bernard,* the general rule that uncharged sexual misconduct is inadmissible because its prejudicial effect outweighs its probative value must be followed. The admission of the evidence of uncharged sexual misconduct was erroneous and prejudicial, therefore its admission requires reversal and remand for a new trial. *Bernard,* 849 S.W.2d at 20.

Defendant raised other points on appeal. However, because defendant's remaining points may not be involved in a new trial, we do not reach and do not decide them. The judgment on each of the eleven counts is reversed and the case is remanded for a new trial.