**STATE of Missouri, Respondent,**

v.

**Brian Scott KELLEY, Appellant.**

**Nos. WD 51023, WD 52974.**

Missouri Court of Appeals,
Western District.

April 22, 1997.

Susan L. Hogan, Appellant Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jacqueline K. Hamra, Assistant Attorney General, Jefferson City, for respondent.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Brian S. Kelley appeals his felony conviction for first degree assault claiming that the State failed to present sufficient evidence that he acted knowingly in causing or attempting to cause serious physical injury to the victim, Travis Jacobs. He also argues that the trial court abused its discretion in allowing Detective Jeffery Moreland to testify about Mr. Kelley's statement that he had previously hit other people on the head. We affirm, finding that there was sufficient evidence from which the jury could have reached its verdict and that the court did not abuse its discretion in admitting Detective Moreland's testimony. Mr. Kelley also asserts that the motion court erred by dismissing his Rule 29.15 motion for postconviction relief because the absolute deadline imposed by the rule arbitrarily denies him due process of law in that there is no provision for late filings for good cause. Because the time limits in Rule 29.15 have been held valid and reasonable, we affirm the dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of June 27, 1994, Travis James Jacobs and two friends, Michael Lancaster and Talia Woolsey, stopped at a Super 8 Motel on their way to Belton from Longview Lake. After Mr. Jacobs checked into the motel, he returned to where his friends were waiting in the parking lot. Ms. Woolsey remained in the car, but Mr. Lancaster stood outside the car with Mr. Jacobs. They saw Ken Sevy, a friend who also happened to be staying at the motel that night, come outside, and the group talked for a while in the parking lot. Then the defendant, Brian Kelley, a friend of Mr. Sevy's, approached the group.

When Mr. Kelley walked up, Mr. Sevy pointed at Mr. Jacobs and told Mr. Kelley to "knock him out." Mr. Kelley shook his head, but Mr. Sevy again told him to knock out Mr. Jacobs. Mr. Kelley at first did nothing, and the group continued talking. When Mr. Lancaster reached into the car to get his luggage, however, Mr. Kelley ran around the corner of another vehicle and punched Mr. Jacobs in the face with his fist. Mr. Jacobs fell back against the car and then dropped to the ground unconscious. The others helped him to stand, and Mr. Jacobs began vomiting. Mr. Lancaster and Mr. Kelley then helped Mr. Jacobs to his room.

Some time later, Mr. Lancaster called an ambulance, and paramedics took Mr. Jacobs to Belton Research Hospital. At the hospital, Mr. Jacobs was belligerent and uncooperative, and hospital personnel called the police, who took Mr. Jacobs into protective custody. At approximately 11:00 a.m. that morning, a corrections officer noticed that Mr. Jacobs appeared to be having seizures, so she called an ambulance. Mr. Jacobs was then taken to the emergency room at Research Medical Center in Kansas City.

Mr. Jacobs had a skull fracture on the right side of his head, and a CT scan revealed that he had an epidural hematoma, a collection of blood between the skull and the covering of the brain which destroys brain tissue and can cause a coma and possibly death. Mr. Jacobs underwent two surgeries

to remove the hematoma and remained unconscious in the hospital for approximately two months. He eventually regained consciousness and was moved to a nursing home for rehabilitation, but has continuing serious injuries.

The State charged Mr. Kelley with the class A felony of assault in the first degree. The jury found Mr. Kelley guilty, and the judge sentenced him to a prison term of 25 years. Mr. Kelley filed a Rule 29.15 motion for post-conviction relief, which the motion court dismissed as untimely. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

■ In his first point on appeal, Mr. Kelley admits that he punched Mr. Jacobs, but argues that the State failed to present sufficient evidence that he acted knowingly in causing or attempting to cause serious physical injury to Mr. Jacobs. In considering whether the evidence on this issue was sufficient to support the jury's verdict, we view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the verdict and disregard all contrary evidence. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993); *State v. Bernard*, 849 S.W.2d 10, 21 (Mo. banc 1993).

A person commits the crime of first degree assault only if he attempts to kill or "knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1.[1] Serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6). As a result of the blow by Mr. Kelley, Mr. Jacobs suffered a skull fracture and an epidural hematoma and was in a coma. At the time of trial, he was still in a rehabilitation center, could not walk on his own, and could not see out of his right eye. Dr. Robert Morantz testified that an epidural hematoma is a life-threatening injury.

Mr. Kelley does not contest that Mr. Jacobs suffered serious physical injury. He does argue, however, that the State failed to show that he had the requisite mental state to commit first degree assault because there was no evidence that he knew hitting Mr. Jacobs on the head could cause such injuries. We disagree.

■ A person acts knowingly "with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3(2). Mr. Kelley states that he did not want to hurt Mr. Jacobs and did not realize that his conduct could cause this type of serious injury. On the other hand, the State provided evidence from which the jury could have concluded that Mr. Kelley was aware punching Mr. Jacobs in the face was "practically certain" to cause him serious physical injury. Thus, Detective Jeffery Moreland testified that Mr. Kelley stated he had hit other people before and knocked them unconscious. Other persons present on the night of the incident in question testified that Mr. Kelley ran at Mr. Jacobs and punched him in the side of the face hard enough to knock him unconscious with a single blow. The jury was not required to believe Mr. Kelley's self-serving denial of intent. From all of these facts, the jury could find that Mr. Kelley was aware hitting Mr. Jacobs could result in serious physical injury. This was adequate to support the finding that he caused the injury "knowingly."

## III. ADMISSIBILITY OF EVIDENCE OF PRIOR FIGHTS

In his second point on appeal, Mr. Kelley argues that the trial court abused its discretion in allowing the State to question Detective Jeffery Moreland about Mr. Kelley's statement that he had previously hit other people on the head.

■ As a general rule, evidence of prior uncharged crimes is inadmissible to show the defendant's propensity to commit crimes. *State v. Conley*, 873 S.W.2d 233, 236 (Mo. banc 1994); *Bernard*, 849 S.W.2d at 13. Evidence of uncharged conduct may, however,

1. All statutory references are to RSMo 1993, unless otherwise indicated.

be admissible to show motive, intent, absence of mistake or accident, identity, or a common plan or scheme. *Id.* Another exception exists for the admission of evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc), *cert denied*, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The evidence must have some legitimate tendency to establish the defendant's guilt for the present charge, and its probative value must outweigh its prejudicial effect. *Bernard*, 849 S.W.2d at 13.

In this case, the prosecutor asked Detective Moreland whether he had questioned Mr. Kelley about why Mr. Sevy told him to hit Mr. Jacobs. Mr. Kelley's attorney objected, but the judge overruled the objection. Detective Moreland stated that Mr. Kelley told him he had struck people at parties before and knocked them out. Mr. Sevy wanted to see him do it again.

■ The evidence that Mr. Kelley had hit other people on the head in the past and knocked them out is admissible under two exceptions to the general propensity rule. First, as noted above, Mr. Kelley denied he had the intent to cause serious injury when he hit Mr. Jacobs. He thus put the intent issue in controversy. The evidence that he had hit other people on the head in the past and rendered them unconscious was relevant to show that Mr. Kelley had knowledge that serious injury could result from hitting someone on the head as he did here.

We also note that the evidence was relevant to show Mr. Kelley's motive for hitting Mr. Jacobs. The evidence was elicited when the prosecution asked why Mr. Sevy would have wanted Mr. Kelley to hit Mr. Jacobs. The fact that Mr. Kelley had previously hit people at parties and knocked them out helps explain why he hit Mr. Jacobs here. He did so to see if he could knock Mr. Jacobs out. Without this testimony, the jury would not have understood why the incident occurred. It thus helped "to present a complete and coherent picture of the events that transpired." *Harris*, 870 S.W.2d at 810.

## IV. RULE 29.15 MOTION FOR POST-CONVICTION RELIEF

Finally, Mr. Kelley argues that the motion court erred by dismissing his Rule 29.15 motion for post-conviction relief because the absolute deadline imposed by the rule arbitrarily denies him due process of law in that there is no provision for late filings for good cause.

■ Appellate review of a dismissal of a 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(k). If an appeal is taken, a 29.15 motion must be filed with 30 days after the filing of the transcript in the appeal. Rule 29.15(b). Here, the transcript on appeal was filed on September 25, 1995. Mr. Kelley did not file his motion, however, until on October 26, 1995. This was beyond the deadline for filing the motion. The time limits in Rule 29.15 have been held valid and reasonable. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc), *cert. denied sub nom., Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Therefore, dismissal was required.

The judgment of conviction is affirmed. The trial court's order dismissing the Rule 29.15 postconviction motion is affirmed.

All concur.