

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111273 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Pike County |
| vs. | ) | |
| | ) | Honorable Milan C. Berry |
| LATORI GREER, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 21, 2023 |

### Introduction

Latori Greer ("Greer") appeals from the trial court's judgment following jury trial convictions on second-degree harassment and first-degree sexual misconduct arising out of an incident during his incarceration. In his sole point on appeal, Greer argues the trial court abused its discretion in permitting the State to introduce evidence of prior uncharged bad acts during his incarceration because the evidence was more prejudicial than probative and made it more likely than not that the jury convicted him based on improper propensity reasoning. Because the evidence was relevant to a requisite element of the sexual-misconduct offense and not so prejudicial as to impact the outcome of the trial, we deny the point. Accordingly, we affirm the trial court's judgment.

## Factual and Procedural History

The charges arose out of an incident that occurred in November 2019 at the Department of Corrections ("DOC") where Greer was an inmate. Greer pressed the call light to take a shower, which prompted the Corrections Officer to open the door to the shower for him. After the Corrections Officer let Greer into the shower, he pressed the call light several more times, prompting her to check on him. When she arrived, Greer was looking at her while stroking his bare penis.

The Corrections Officer then directed Greer to return to the housing unit and informed him that security cameras had recorded the incident. Greer asked her whether it would have been okay if it had not been on camera, and the Corrections Officer replied no. The Corrections Officer documented the incident in a report. The Corrections Officer noted she had largely had positive interactions with Greer prior to this incident, and his actions took her aback and made her feel disrespected. The Corrections Officer explained that she had prior experience with this kind of incident, which she stated was not usually criminally prosecuted, and was "shocked that finally something is happening."

The State initiated criminal charges against Greer with one count of harassment in the second degree and one count of sexual misconduct in the first degree. For the harassment count, the State alleged that Greer, without good cause, openly masturbated in front of a corrections officer with the purpose to cause emotional distress. For the sexual-misconduct count, the State alleged that Greer exposed his genitals under circumstances in which he knew that such conduct was likely to cause affront or alarm.

The case proceeded to a jury trial. Prior to trial, the State indicated it intended to introduce business-record evidence that Greer had committed prior similar conduct violations at the DOC via a report (the "Report"), otherwise known as an institutional violation summary.

2

The Report was prepared by a DOC Officer, and it enumerated thirteen additional conduct violations committed by Greer over the course of approximately three years for "self-touching of one's sexual parts" or "expos[ing] one's sexual parts." The Report also referenced the incident underlying the present charges and listed multiple non-sexual violations that were redacted for trial.

Greer opposed admitting the Report into evidence through a motion in limine, arguing that the prior conduct violations constituted inadmissible evidence of uncharged prior bad acts that did not fall under any exception. The State countered that the Report was probative of the mental state of first-degree sexual misconduct, specifically that Greer knew his actions during the incident were likely to cause affront or alarm. Greer responded that he did not intend to put that element at issue during trial. The trial court overruled Greer's motion and deemed the Report admissible.

At trial, the State called the Corrections Officer and the DOC Officer. The State introduced the Report during the DOC Officer's testimony. Greer renewed his objection and sought a continuing objection on the same grounds as his motion in limine, which the trial court acknowledged and overruled. The State asked the DOC Officer to read aloud each violation listed in the Report—to which Greer objected on the grounds of cumulative evidence and was overruled—and the DOC Officer read as follows:

- 10/5/2019, 15.2 self-touching—[.]
- 8/24/2018, 15.3, exposing one's sexual parts.
- 5/3/2018, 15.2, self-touching of one's sexual parts.
- 2/19/2018, 15.2, self-touching of one's sexual parts.
- 11/9/2017, 15.2, self-touching of one's sexual parts.
- 10/19/2017, 15.2, self-touching of one's sexual part.
- 9/21/2017, 15.2, self-touching of one's sexual parts.
- 2/27/2017, 15.2, self-touching of one's sexual parts.

3

- 2/5/2017, 15.2, self-touching of one's sexual part[s]. 15.3, exposing of one's sexual parts.
- 12/8/2016, 15.2, self-touching of one's sexual parts and 21.1, [subjecting another person to] abuse [or] obscene language or gestures.
- 1/26/2016, 15.2, self-touching of one's sexual parts.
- 8/21/2016, 15.2, self-touching of one's sexual parts.
- 8/18/2016, 15.2, self-touching of one's sexual parts.

Aside from confirming that the Report was Greer's institutional violation summary and not anyone else's, the State asked no further questions about the Report. On cross-examination, the DOC Officer testified that, while preparing the Report, she did not interview the Corrections Officer or Greer, and that her role is to "check behavior patterns, print out the documents and forward them on."

The State also introduced photographs from the DOC security cameras. Greer did not testify in his own defense or put on evidence. At the close of the State's evidence and the close of all evidence, Greer moved for an acquittal, which the trial court denied.

The jury found Greer guilty on both counts. Greer moved for a judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial on grounds including those alleged in the point relied on. The trial court denied the motion and sentenced Greer to thirty days in jail on each count. This appeal follows. The State declined to file a respondent's brief.

## Points on Appeal

In his sole point on appeal, Greer contends the trial court abused its discretion in admitting the Report because the evidence of uncharged prior bad acts was inadmissible propensity evidence that was vastly more prejudicial than probative. Specifically, Greer argued the Report prejudiced the outcome of his trial because, aside from the Report, the State's case rested largely on the credibility of the Corrections Officer's testimony.

4

## Standard of Review

"A trial court has broad discretion to admit or exclude evidence at trial." State v. Madrigal, 652 S.W.3d 758, 771–72 (Mo. App. E.D. 2022) (citing State v. Buechting, 633 S.W.3d 367, 376 (Mo. App. E.D. 2021)). "We therefore review preserved claims of error in evidentiary rulings for whether the trial court abused its discretion." Id. (citing Buechting, 633 S.W.3d at 376). "This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal quotation omitted). "We review an appeal from an evidentiary ruling 'for prejudice, not mere error, and the trial court's decision will be reversed only if the error was sufficiently prejudicial that it deprived the defendant of a fair trial.'" Madrigal, 652 S.W.3d at 772 (quoting Buechting, 633 S.W.3d at 376).

## Discussion

Missouri law generally recognizes that evidence of uncharged prior bad acts is inadmissible to show the propensity of the defendant to commit the charged offense. Id. (quoting State v. Winfrey, 337 S.W.3d 1, 11 (Mo. banc 2011)). "This prohibition is rooted in the principle 'that an accused may not be found guilty or punished for a crime other than the one on trial.'" Id. (quoting State v. Conley, 873 S.W.2d 233, 236 (Mo. banc 1994)). The exclusion of prior uncharged bad acts is intended to prevent the jury from using such evidence to infer the defendant has "a general criminal disposition, a bad character, or propensity or proclivity to commit the type of crime charged, and in turn, basing a finding of guilt on the uncharged crime." Id. (internal quotations omitted). However, it is also well established that Missouri law recognizes that evidence of prior bad acts is admissible for other permissible purposes. Id. (quoting Winfrey, 337 S.W.3d at 11). Specifically, "[s]uch evidence may be admissible if it

5

tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan . . . ; or (5) the identity of the person charged[.]" Primm, 347 S.W.3d at 70 (internal citation omitted).

"If evidence of uncharged crimes, wrongs, or acts tends to prove something other than the defendant's propensity to commit the crimes for which he is charged, then the question becomes whether the evidence is legally relevant." State v. Jackson, 636 S.W.3d 908, 921 (Mo. App. W.D. 2021) (internal citation omitted). "Evidence is legally relevant if its probative value outweighs its costs—'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.'" Id. (internal quotation omitted). "In balancing the probative value of evidence against its potential prejudicial effect on the jury, 'the trial court must carefully consider that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors.'" Id. (internal quotation omitted).

Here, Greer challenges the admission of the Report, which listed thirteen prior uncharged incidents over three years at the DOC of Greer exposing or touching himself in view of others. The State maintains the Report was admissible for the purpose of proving that Greer's actions did not constitute a mistake or accident but instead showed he knew his actions were likely to cause affront or alarm, which is probative of the mental-state element of sexual misconduct. See Primm, 347 S.W.3d at 70 (internal citation omitted) (recognizing the exception for admitting prior bad act evidence to prove the absence of mistake or accident); see also Section 566.093[1] (stating that a person commits the offense of sexual misconduct in the first degree when they expose themselves "know[ing] that his or her conduct is likely to cause affront or alarm").

---

[1] All Section references are to RSMo (2016).

6

Greer contends that the logical relevance of the Report to the knowledge element of the sexual-misconduct charge was only minimally probative, and he notes he informed the trial court he did not intend to put that element at issue at trial. Greer asserts the Report ultimately should have been excluded because its probative value was outweighed by its potential for prejudice. See Jackson, 636 S.W.3d at 922. In particular, Greer points to the Corrections Officer's testimony that Greer rang the call light multiple times and, when the Corrections Officer arrived, he looked her in the eyes while masturbating. Greer reasons that if the jury believed her testimony, then it was clear under those circumstances that Greer's behavior would cause affront or alarm to the average person. Greer therefore concludes that the Report's additional thirteen prior uncharged bad acts held little probative value and instead broadly painted Greer as a "bad person" who had the proclivity to engage in the type of behavior underlying the charges. Such evidence would serve as an improper propensity basis for his convictions.

However, the State bears the burden to prove every element of the charged offense. State v. Peeler, 603 S.W.3d 917, 921 (Mo. App. E.D. 2020) (citing Jackson v. Virginia, 443 U.S. 307, 314–15 (1979)). Regarding Greer's contention that the Report has little probative value as to the mental-state element for sexual misconduct, "logical relevance is a 'very low-level test that is easily met.'" Jackson, 636 S.W.3d at 921 (internal quotation omitted). Further, with regard to legal relevance, the trial court properly applied the required balancing test. We hold that it was not against the logic of the circumstances to find that the evidence in the Report was admitted for a proper purpose; nor was the Report more prejudicial than probative for proving that Greer's conduct during the incident in question was not a mistake but was committed knowing his actions were likely to cause affront or alarm. See Primm, 347 S.W.3d at 70 (internal citation omitted). Greer was naked in the shower when the conduct in question occurred. Evidence of

7

Greer's prior incidents of exposing his genitals and masturbating in front of other corrections officers is relevant to whether Greer mistakenly thought his actions while in the shower were not seen by a third party or whether he knew his conduct was likely to cause affront or alarm. See id.

Even had the evidence not been admissible, Greer must also demonstrate prejudice warranting reversal to prevail on appeal. See Madrigal, 652 S.W.3d at 772 (quoting Buechting, 633 S.W.3d at 376); see also State v. Stafford, 589 S.W.3d 705, 712 (Mo. App. E.D. 2019) (internal quotation omitted) (noting "[n]o prejudice results unless 'the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence'"). Here, Greer argues that the sheer volume of the Report's prior incidents of self-touching and self-exposure—thirteen incidents in total—made it more likely that the jury did not use the evidence of uncharged prior bad acts for the limited consideration of Greer's knowledge that his actions were likely to cause affront of alarm but instead improperly used the evidence to convict Greer for having a propensity to engage in this kind of conduct.

When determining whether the State's reference to an uncharged prior bad act is prejudicial, we consider several factors, including "whether the State prompted or emphasized the reference, whether the reference was fleeting and isolated, whether specific offenses were mentioned, whether an objection was made and sustained, and whether the reference played a decisive role in the verdict given the context of the State's case against the defendant." Stafford, 589 S.W.3d at 712 (citing State v. Goff, 129 S.W.3d 857, 866 n.7 (Mo. banc 2004)). Here, although we appreciate Greer's concern about the potential impact of the DOC Officer reading

8

aloud each of the thirteen prior conduct violations at trial, the record is not clear that Greer specifically objected to the *number* of prior DOC sexual conduct violations as opposed to the admission of any sexual conduct violation as an uncharged prior bad act. See State v. Schneider, 483 S.W.3d 495, 504–05 (Mo. App. E.D. 2016) (finding the defendant's objection to reading into evidence the individual file names of uncharged child pornography files did not extend to preserve a challenge to the *amount* of uncharged child pornography files). In his motion in limine and at the motion hearing, Greer objected to the introduction of evidence of any uncharged prior incident. Greer renewed his objection at trial when the State introduced the Report. See id. Although Greer objected to the individual violations being read into evidence by the witness on the grounds of cumulativeness, Greer did not articulate his reasoning to the trial court as to whether the issue was about the *number of violations* being read or that any prior-acts evidence was redundant to other evidence already in the record. See id.

Even assuming favorably to Greer that his objection on grounds of cumulativeness was directed towards the number of the listed incidents in the Report, the record shows the State did not unduly overemphasize the evidence in the Report. Compare Stafford, 589 S.W.3d at 712 (finding no prejudice in the admission of relevant prior bad act evidence where the record showed the State did not improperly highlight the evidence during the presentation of evidence or in closing argument) with State v. Batiste, 264 S.W.3d 648, 654–55 (Mo. App. W.D. 2008) (finding uncharged prior bad act evidence was prejudicial where the State substantially highlighted the challenged evidence when examining its witnesses and giving its closing argument and where the State attempted to rehabilitate a key witness's credibility regarding the prior bad acts evidence during rebuttal argument). Greer's primary focus on appeal is that the State sufficiently proved the knowledge element of the charge through other evidence, making

the Report merely cumulative. But cumulative evidence is not necessarily prejudicial evidence. State v. Beck, 581 S.W.3d 97, 101 (Mo. App. W.D. 2019) (internal quotation omitted) ("A defendant is not prejudiced when allegedly improper evidence was merely cumulative to other evidence admitted without objection establishing the same facts."). We further note that the Report initially contained additional non-sexual conduct incidents which were ordered to be redacted by the trial court so that only the relevant sexual-conduct incidents were presented to the jury. The trial court's actions demonstrate its understanding of Greer's objection and its careful balancing of the competing interests of Greer and the State, supporting a finding that there was no abuse of the trial court's discretion. See State v. Simrin, 384 S.W.3d 713, 721 (Mo. App. S.D. 2012) (internal quotation omitted) ("If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred."). Further, after prompting the DOC Officer to read the Report aloud and confirming that the Report was Greer's institutional violation summary, the State asked no further questions about the Report of its witness and did not inquire into the specifics of any violation. The State then rested its case. In this way, the State did not overemphasize or draw excessive attention to the evidence in the Report beyond its plain facts. See Stafford, 589 S.W.3d at 712. During closing argument, the State properly restricted its mention of the Report's contents to arguing that it proved Greer knew his conduct was not accidental and was likely to affront or alarm—which was the permissible purpose identified by the trial court in its earlier evidentiary ruling and went to an essential element of the charged offenses. See id. Additionally, the record indicates the trial court did not deny any request by Greer for a limiting instruction regarding the evidence in the Report. See State v. Shelton, 529 S.W.3d 853, 864 (Mo. App. E.D. 2017) (finding the trial court did not abuse its discretion during

10

voir dire after carefully considering the legal issue presented and indicating it would strongly consider a curative instruction if proposed by the defendant, who chose not to request one).

Given these facts in record before us, we do not find the Report resulted in sufficient prejudice so as to deprive Greer of a fair trial, nor did the trial court abuse its broad discretion in the admission of relevant evidence. See Madrigal, 652 S.W.3d at 772 (quoting Buechting, 633 S.W.3d at 376). The point is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.