**STATE of Missouri, Respondent,**

v.

**Ikie O. WRIGHT, Appellant.**

**Nos. WD 46458, WD 47528.**

Missouri Court of Appeals,
Western District.

Sept. 28, 1993.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J. and FENNER and HANNA, JJ.

HANNA, Judge.

The defendant appeals from his conviction by a jury of one count of first degree burglary (§ 569.160, RSMo 1986) and two counts of receiving stolen property (§ 570.080, RSMo 1986). The case was tried May 11, 1992, in Saline County. The defendant was sentenced as a prior, persistent and class X offender to twenty years imprisonment on each of the three counts to run concurrently with each other.

The evidence viewed in the light most favorable to the state is as follows. On September 14, 1991, Mr. Mullins, police chief in Slater, Missouri, his wife, Mr. and Mrs. Smith and another couple had returned from dinner in Sedalia about 10:00 or 10:30 p.m. Mr. Smith saw the defendant walking down Main Street. He drove around the block and observed the defendant for a second time. The defendant was carrying a pair of boots as he crossed a vacant lot onto Parker Street. Smith drove down Parker and saw the defendant in a home owned by Bill and Margaret Baker. The boots that the defendant had been carrying were on the sidewalk leading up to the house.

Mr. Smith positioned his car so that they could see into the Bakers' home. Chief Mullins saw the defendant standing inside the house at the hallway door. When the defendant closed the door, a mirror reflected a light and "illuminated him real well." Mullins and Smith both said they saw the defendant holding a long gun before he disappeared into the west part of the house. Chief Mullins radioed for a backup patrol car. He then entered the house and found Margaret Baker inside. The defendant was no longer there.

Bill Baker had fallen asleep in his truck while listening to a baseball game and awoke when he heard someone tell his wife that a man was in the house. He noticed that his three guns were missing which he identified at trial as a Western Auto gun, an old ninety-seven Winchester and a model 12 Winchester pump. He kept these guns in the hall closet.

Chief Mullins believed that the defendant lived in a garage at 450 Locust and went to that location. When the defendant appeared, Mullins placed him under arrest. Mullins later returned to the defendant's address to search the garage. Ramona Carter, the owner's daughter,[1] lived in the house and consented to the search of the garage. She accompanied Chief Mullins to the garage and saw two guns propped up in the corner of the room. Mullins took the guns.

Two days later, Betty Reeves turned over the third gun, the ninety-seven Winchester, to Chief Mullins. She testified that the defendant had sold her the gun.

The Chief Deputy of Saline County testified that he was familiar with the market value of the guns and assessed a value of $225–$250 for the ninety-seven Winchester for which Ms. Reeves testified she had paid defendant $25. He valued the model 12 Winchester at $125–$150 and the Western Auto gun at $80–$85.

Defendant filed a Rule 29.15 motion on January 21, 1993, and the motion court overruled it as not timely filed. Notice of appeal from the convictions and denial of the Rule 29.15 motion was duly filed and consolidated on appeal.

■ The defendant first claims the trial court abused its discretion in failing to sever the two counts of receiving stolen property

---

1. Raymond Carter owned the house and had given the defendant permission to sleep in the garage.

from the burglary first degree count. He claims he was prejudiced by the evidence of disposing of and retaining the property regarding the receiving charges as it related to the burglary charge. He argues this evidence would necessarily cause a jury to improperly infer that his entry of the Baker home was with the intent to steal.

Supreme Court Rule 23.05 governs the joinder of offenses in an indictment or information:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

All of the offenses charged were of the same or similar character and were acts that constituted a common scheme or plan. Defendant complains the trial court abused its discretion by refusing his motion for severance.

■ There is a distinction between the proper joinder of charges (about which there is no complaint) and their severance for trial. When considering whether severance for trial would be proper, the court must consider: 1) the number of offenses charged, 2) the complexity of the evidence to be offered, and 3) whether the trier of fact will be able to distinguish the evidence and to apply the law intelligently as to each offense. *State v. McCrary*, 621 S.W.2d 266, 272 (Mo. banc 1981).

■ Applying this criteria to the facts in the case at hand, we hold that the trial court did not commit error by trying the crimes together. There were three offenses charged and the evidence offered was simple and straightforward. The jury could easily distinguish the law as to each crime charged by virtue of the simplicity of the evidence supporting each crime, the court's verdict directing instructions, and the court's instruction to the jury that each offense and the evidence and law applicable to it must be considered separately. Liberal joinder is fa-

vored to promote judicial economy. *Mays v. State*, 810 S.W.2d 68, 71 (Mo.App.1990).

■ The defendant in his motion for separate trials does not make a "particularized showing of substantial prejudice if the offense is not tried separately." The decision on a motion to sever is based upon trial court discretion. *Id.* Considering these factors, the motion to sever was properly denied.

■ Defendant next complains that the court erred by refusing a proffered definition instruction. During the instruction conference, the defendant submitted Instruction C which defined "purpose or purposely" and "possess or possessed." The court gave Instruction No. 14, a definition instruction, which defined "enter unlawfully," "inhabitable structure," "knowingly," "of another," "property," and "receiving," all of which are definitions found in MAI–CR3d 333.00. The Notes on Use for MAI–CR3d 323.52, Burglary in the First Degree, direct the definition of the crime which the defendant intended, in this case, stealing, and if requested, various other words and terms. Not included in the mandated definitions are any one of the four proffered in Instruction No. C. The Notes on Use for MAI–CR3d 324.10, Receiving Stolen Property, directs the definition, when requested, of "of another," "property," and "receiving." Again, none of the four words requested by the defendant are mandated by the Notes on Use for the submission of the crime of receiving stolen property.

However, the Notes on Use for MAI–CR3d 333.00, Definitions, General Form, paragraph 2.E, requires that if the definition itself contains a word or group of words that are defined under MAI–CR3d 333.00, the court must, upon proper written request by the state or the defendant, define that word or group of words. Included in the definitions found in Instruction No. 14 under "enter unlawfully" is the word "purpose," and "purposes" appears in the definition of "inhabitable structure."

"Enter unlawfully" is defined:

A person enters unlawfully or remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his *purpose*, en-

ters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. (emphasis added)

Under this definition, "purpose" is irrelevant and made so by the clear meaning of the sentence: "A person who, *regardless of his purpose,* enters or remains in or upon the premises...." We are not concerned with the defendant's purpose under this definition so there is no prejudice to the defendant. Additionally, the definition sentence that uses the word "purpose" contemplates a place other than one's home or residence. The structure in this case was the Bakers' home.

The word "purposes" is again found in the definition of "inhabitable structure," subparagraph (b). Subparagraph (b) states "where people assemble for *purposes* of business, government, education, religion, entertainment, or public transportation; or...." The definition of inhabitable structure in subparagraph (b) should not have been given because it is not applicable to these facts. If the defendant was to be convicted of entry of an inhabitable structure, then it had to be under the definition provided in subparagraph (a): "where any person lives...." The definition in subparagraph (a) does not include the words purpose or purposes.

MAI–CR3d 333.00.3 directs that no definition should be submitted to the jury which contains portions not applicable to the facts of the particular case. Under that direction subparagraph (b) with the word "purposes" should not have been submitted to the jury because it was not the inhabitable structure under the facts of this case. The structure burglarized was the home of the Bakers and there was no need, under these facts, to define an inhabitable structure as described in subparagraph (b).

Tendered Instruction No. C also defines "possess" and "possessed." Neither word is found in the definitions of Instruction No. 14, although it does include the word "possessory interest" and "possession." Possessory interest is found under the definition "of another" and "possession" is found under definition of "receiving." In both situations, the definitions refer to Chapter 195 crimes. Point denied.

■■■ For the defendant's third point, he argues that the trial court committed plain error in failing to declare a mistrial, *sua sponte,* when the prosecutor commented during closing argument about the absence of defendant's evidence claiming it was a comment on the defendant's right not to testify which, in effect, shifted the burden of proof to the defendant. The defendant did not offer any evidence. Our review, pursuant to Supreme Court Rule 30.20, is to determine whether the error rises to the level of manifest injustice or a miscarriage of justice.

The prosecutor's argument to which the defendant now objects was as follows:

I'll have a few moments to talk with you again after [defendants counsel] talks to you. I want you to remember during this period of time, and ask what evidence do we have here that this defendant did not commit this crime, and there is none. The evidence is overwhelming.

■■ There is no question that the law prohibits a prosecutor from commenting on the defendant's failure to testify. *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Nevertheless, this prohibition does not preclude an argument that makes reference to a defendant's failure to offer evidence. *Id.* "It proscribes only direct and certain references to the accuseds failure to testify." *Id.*

■■ The state may argue that the evidence is uncontroverted, *State v. Carpenter,* 710 S.W.2d 284, 285 (Mo.App.1986), or that the defendant did not offer evidence. *State v. Schupp,* 677 S.W.2d 909, 913 (Mo.App. 1984). Additionally, there is a strong policy against reviewing plain error involving closing argument because the failure to object during closing arguments is more likely a function of trial strategy rather than of error.

*State v. Wood,* 719 S.W.2d 756, 759–60 (Mo. banc 1986). Point denied.

Defendant next complains that the definition of reasonable doubt in Instruction MAI–CR3d 302.04 impermissibly lowers the state's burden of proof. The instruction has been repeatedly upheld by the Missouri Supreme Court. *See, e.g., State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Waller,* 816 S.W.2d 212, 218 (Mo. banc 1991). Point denied.

For the defendant's final point, he claims that the trial court committed error by dismissing his Rule 29.15 motion as untimely. Rule 29.15(b) mandates that "the motion shall be filed within thirty days after the filing of the transcript in the appeal," pursuant to Rule 30.04. Defendant filed his motion on November 19, 1992, and he does not contest the untimeliness of his filing as dictated by Rule 29.15(b). The time limitations in Rule 29.15 are valid and mandatory. *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Point denied.

The judgments of conviction are affirmed and the courts order denying the Rule 29.15 motion is affirmed.

All concur.