STATE of Missouri, Plaintiff–Respondent,

v.

Craig L. JOHNSON, Defendant–Appellant.

No. 27916.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 2007.

---

4. All rule references are to Missouri Court Rules (2007), unless otherwise specified.

Ellen H. Flottman, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Stephanie L. Wan, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Craig L. Johnson ("Defendant") was charged in an amended felony information with three counts of burglary in the first degree alleging that he entered inhabitable structures in three separate locations for the purpose of stealing, in violation of Section 569.160.[1] Prior to trial, Defendant filed a motion to sever the offenses. The trial court severed the offense charged in Count III, but not the other two counts.[2] A jury trial was held on the two unsevered burglary charges and Defendant was found guilty on Count I and not guilty on Count II. Defendant appeals claiming the trial court erred in failing to sever the two counts of burglary, and in sustaining the State's objection to his proposed jury instruction relating to the reliability of witness identifications.

Viewed in the light most favorable to the verdict the following evidence was adduced at trial. The burglary charged in Count I arose out of an incident that occurred on June 25, 2005, when Ethyl Louise Snyder ("Snyder") arrived at her home in Springfield, Missouri, around lunchtime. Her son, Richard Snyder ("Richard"), was at the house and his car was parked in the driveway. Richard was there to do some remodeling work and pursuant to this work kept some tools in the garage. Snyder parked next to her son's car in the driveway, and noticed that the garage door was open.

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

2. Count III, which was severed, was ultimately dismissed by the State.

At around 3:00 p.m., Snyder's neighbor, Gerald Knudson ("Knudson"), noticed a green car parked in front of Snyder's house, and then saw a man run out of Snyder's garage with two items, which looked like silver toolboxes. Knudson concluded that the man was stealing the items when he saw the man throw the two items through the open window of the green car. As a result, Knudson ran outside, determined that the license number on the green car was 870–YHL, and went back inside and wrote the number down.

Knudson then went to Snyder's house and asked Snyder and Richard if they were aware that a man had taken some items from the garage. Snyder and Richard went to the garage to investigate and discovered that two of Richard's tools had been taken: a Black & Decker Skilsaw (a circular saw) and a Craftsman Sawzall (a reciprocating saw).

Knudson described the man as African–American with short, black hair, around 5′10″ to 5′11″, and weighing approximately 180 pounds. Later, Knudson picked Defendant out of a photo lineup he was shown by a detective, saying that he was 80% certain the photo showed the man he witnessed stealing from Snyder's house. Knudson then identified Defendant at trial and stated that he was 100% certain Defendant was the man he saw.

Later on that same day, Defendant went to Square Deal Pawn Shop and pawned several items with Tim Lawson ("Lawson"). The pawned items were a Craftsman brad nailer, a Black & Decker Skilsaw, and a Craftsman Sawzall. As required by law, Lawson asked for and received Defendant's driver's license and filled out a pawn ticket for Defendant.

The burglary charged in Count II arose out of an incident that occurred on July 8, 2005, when Barbara DePue ("DePue") returned to her home in Springfield, Missouri, between 8:10 and 8:20 a.m. after walking at the mall. She pulled into the driveway behind what she believed was her husband's green car. She noticed that the green car had a missing chunk of paint on the driver's side near the back of the car and made a mental note to tell her husband so he could get it fixed. After unlocking the front door and going inside the house, DePue noticed that the television was sitting on the floor and the VCR was on a chair, which was unusual because these items were normally in the entertainment center. She called out for her husband and received no response.

DePue became scared, picked up the cordless phone, went outside, and walked to her neighbor's house. After discovering that her neighbor was not home, DePue began walking back to her house when she noticed a man jumping over the fence from her backyard. The man ran towards the green car in DePue's driveway saying, "My car has been stolen." The man jumped into the green car and drove through DePue's neighbor's yard and onto the street. DePue realized the green car was not her husband's and noted that the license plate number was 870–YHL.

After waiting for the police to arrive and make sure her house was safe, DePue went inside her house and discovered her jewelry box had been dumped out on the bed, her drawers had been rummaged through, her credit cards were pulled out of her fanny pack, and a kitchen window was open with the screen taken off. However, the only things missing were two costume jewelry rings and two remote controls.

DePue described the man as African–American with short, curly hair, and wearing an orange T-shirt. DePue was shown a photo lineup by a detective and she selected two photographs and marked each

with a 50% probability that the photo represented the man she witnessed. Defendant was one of the two men represented in the photos. During trial, DePue made an in-court identification of Defendant.

The license plate 870–YHL was registered to a green 1997 Ford Escort belonging to Defendant. Defendant was arrested while driving that vehicle on July 22, 2005. An orange T-shirt was found in the car and Defendant's address and birth date matched that given to the pawnshop.

Defendant's jury trial on the two counts of burglary was conducted from May 15–17, 2006. The jury found Defendant guilty of Count I, the Snyder burglary, but not on Count II, the DePue burglary. He was sentenced to fifteen years imprisonment as a prior and persistent offender. Defendant now appeals.

In his first point on appeal, Defendant claims the trial court erred in overruling his motion to sever the two counts and as a result he was substantially prejudiced. We review a trial court's decision not to sever offenses in two steps. *State v. Woodson*, 140 S.W.3d 621, 626 (Mo.App. S.D.2004). "First, we determine, based on the State's evidence only, whether the offenses were properly joined as a matter of law. If not, then prejudice is presumed and we must reverse and order new separate trials of the offenses." *Id.* (internal citations omitted). "[S]econd, upon a determination that the joinder was proper, this 'court must then determine whether the trial court abused its discretion in refusing to sever the offenses.'" *State v. Saucy*, 164 S.W.3d 523, 528 (Mo.App. S.D. 2005) (quoting *State v. Kelly*, 956 S.W.2d 922, 925 (Mo.App. W.D.1997)).

Whether the offenses were properly joined is a question of law and addresses what crimes can be charged in a single proceeding. *Saucy*, 164 S.W.3d at 528. Multiple offenses are properly joined in the same information or indictment if they are of the same or similar character or are based on two or more acts that are part of the same transaction or are part of two or more acts or transactions that are connected or constitute parts of a common scheme or plan. Section 545.140.2; Rule 23.05;[3] *Saucy*, 164 S.W.3d at 528. "Joinder is proper if the manner in which the crimes were committed is so similar that it is likely the same person committed all charged offenses." *Woodson*, 140 S.W.3d at 626.

In this case, Defendant argues that the details of the two burglary counts demonstrate improper joinder. He claims the only similarity between the two counts was that each involved a burglary where a similar car was seen. In support, Defendant notes that in the Snyder burglary the car was parked on the street, while in the DePue burglary the car was parked in the driveway; that in the Snyder burglary the burglar went into an open garage, while in the DePue burglary the burglar removed a screen and went into a house; and that in the Snyder burglary two saws were taken, while in the DePue burglary some jewelry was taken and a television and VCR was intended to be taken.

Contrary to Defendant's argument, the details of the two burglary counts are sufficiently similar to justify their joinder. First, in each case Defendant was picked out of photo lineup as being at the scene of the burglary. Second, and most important, it is not just that a similar car was seen at the scenes of both burglaries, as

**3.** All references to rules are to Missouri Rules of Criminal Procedure (2006) unless otherwise indicated.

Defendant argues, but similar green cars with the same license plate number. The green car with this license plate number was registered to Defendant. Further, both offenses were burglaries of the residence.

■■■ Having determined that joinder was proper we now need to determine whether the trial court's denial of the motion to sever amounts to an abuse of discretion. "The trial court has discretion to sever multiple offenses jointly charged in an information or indictment when a party makes a particularized showing of substantial prejudice in a written motion to sever." *State v. Hyman,* 37 S.W.3d 384, 394 (Mo. App. W.D.2001); Rule 24.07. Substantial prejudice is defined as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal." Section 545.885.2. "In assessing the propriety of refusal to sever the offenses for trial, the relevant issues are the number of offenses charged, the complexity of the evidence, and the jury's ability to distinguish the evidence and to apply the law intelligently to each offense." *Hyman,* 37 S.W.3d at 394.

■■■ Defendant claims he made a showing of substantial prejudice. He claims he was prejudiced because evidence of each burglary would have been inadmissible as propensity evidence in a trial for the other burglary. Whether evidence of the separate crimes would have been inadmissible propensity evidence had the two crimes not been joined is a "relevant factor in the determination of prejudice." *State v. Conley,* 873 S.W.2d 233, 238 (Mo. banc 1994). "However, even where the evidence would not be admissible if the charges are tried

separately, any prejudice may be overcome where the evidence with regard to each crime is sufficiently simple and distinct to mitigate the risks of joinder." *Id.*

In this case, assuming without deciding that the evidence of one burglary would be inadmissible propensity evidence in a separate trial on the other burglary, the prejudice associated with that evidence is overcome because the evidence of each burglary was sufficiently simple, uncomplicated, distinct, and easy for the jury to understand so as to mitigate the risks of joinder. In the Snyder burglary, the evidence was that Defendant broke into a garage, stole two tools, and drove away in a green car. In the DePue burglary, the evidence indicated that the burglar broke into a house, stole a few items, and drove away in a green car. The evidence of each burglary was very easy to distinguish and with the exception of one witness,[4] the State used two different sets of witnesses to prove each offense.

■■■ "In addition to the simplicity of the evidence, courts also weigh the impact of jury instructions; clear instructions can help a jury competently distinguish between offenses." *State v. Howton,* 890 S.W.2d 740, 745 (Mo.App. W.D.1995). In the instant case, the jury was given an instruction based on MAI–CR3d 304.12, which stated, "The defendant is charged with a separate offense in each of the two counts submitted to you. Each count must be considered separately." We presume jurors follow the instructions given to them by the court. *State v. Vanlue,* 216 S.W.3d 729, 735 (Mo.App. S.D.2007). The record in the instant case demonstrates that the jury complied with this instruction because it found Defendant guilty of the Synder burglary, Count I, but acquitted

**4.** The same police detective conducted separate photo lineups for both Knudson and De-Pue.

him of the DePue burglary, Count II. This result makes it clear that the jury was in fact able to "distinguish between the evidence and consider the offenses and the elements of each offense separately." *Howton,* 890 S.W.2d at 745. Therefore, even assuming that evidence of one of the burglaries would not have been admissible as propensity evidence as to the other burglary, if tried separately, here there is no showing of substantial prejudice from the joinder because the evidence was "sufficiently simple and distinct to mitigate the risks of joinder." *Conley,* 873 S.W.2d at 238.

■■■ Defendant also claims that he demonstrated substantial prejudice because he alleged in his motion to sever that he "may wish to testify on one charge, but not the other." A statement by a defendant that he intended to testify as to one offense but not the other does not constitute a particularized showing of prejudice. *State v. Strauss,* 893 S.W.2d 890, 893 (Mo. App. W.D.1995). Further, if Defendant was sincere about his desire to testify as to one of the charged burglaries but not the other he could have done so without prejudice. Defendant could have testified as to the facts of the one burglary and invoked the Fifth Amendment if questioned about the other burglary. *Woodson,* 140 S.W.3d at 627; *State v. White,* 755 S.W.2d 363, 368 (Mo.App. E.D.1988). Testifying in this manner does not substantially prejudice a defendant. *White,* 755 S.W.2d at 368.

The two counts were not improperly joined and the trial court did not abuse its discretion by failing to grant Defendant's motion to sever the two burglary charges. Point one is denied.

■■■ For his second point, Defendant alleges that the trial court erred in not issuing a non-MAI identification instruction. Defendant offered the following instruction:

Identity is a question of fact for determination by you, the jury. It is dependent upon the credibility of the witness or witnesses offered for this purpose, and you have the right to consider all facts previously charged regarding credibility of witnesses. Some, but not all of the factors that you may consider in assessing reliability of identification are the opportunity of the witness to view the alleged perpetrator at the time of the alleged incident, the witness' degree of attention toward the alleged perpetrator at the time of the alleged incident, the possibility of mistaken idenity [sic], whether the witness' identification may have been influenced by factors other than the view that the witness claimed to have had, and whether the witness on any prior occasion did not identify the defendant in this case as the alleged perpetrator.

The trial court refused Defendant's above instruction, and instead submitted jury instruction number one, which was patterned on MAI–CR3d 302.01. That instruction read, in part, that

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

■■■ The decision whether or not to submit a tendered jury instruction is within the trial court's discretion. *State v.*

*Hartman,* 224 S.W.3d 642, 648 (Mo.App. S.D.2007). Our review of a trial court's refusal to submit an instruction is limited to a determination of whether the court abused its discretion in denying the instruction. *Id.* An abuse of discretion occurs if a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a careful lack of consideration. *State v. Davis,* 203 S.W.3d 796, 799 (Mo.App. W.D.2006).

We find no abuse of discretion in the trial court's refusal to submit Defendant's tendered instruction. The notes on use to MAI–CR3d 302.01 make clear that "no other or additional instruction may be given on the believability of witnesses, or the effect, weight, or value of their testimony." MAI–CR3d 302.01, Notes on Use 3. Additionally, Missouri courts have rejected the notion that a trial court errs by refusing to give an additional instruction on witness credibility beyond that contained in the general credibility instruction of MAI–CR3d 302.01. *State v. Wright,* 751 S.W.2d 48, 53 (Mo. banc 1988); *State v. Borden,* 605 S.W.2d 88, 93 (Mo. banc 1980); *State v. Briscoe,* 913 S.W.2d 812, 816 (Mo.App. W.D.1995); *State v. Gilmore,* 797 S.W.2d 802, 809–10 (Mo.App. W.D.1990).

Defendant's second point is denied. The judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.