STATE of Missouri, Plaintiff–Respondent,

v.

George B. MCDONALD, Defendant–Appellant.

No. SD 29579.

Missouri Court of Appeals, Southern District, Division One.

April 2, 2010.

Motion for Rehearing or Transfer Denied April 26, 2010.

Application for Transfer Denied Aug. 31, 2010.

William J. Fleischaker, Joplin, MO, for Defendant–Appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Asst. Atty. Gen., Jefferson City, MO, for Plaintiff–Respondent.

JEFFREY W. BATES, Presiding Judge.

After a jury trial, George McDonald (Defendant) was convicted of one count of first-degree assault of a law enforcement officer; one count of resisting arrest; two counts of first-degree tampering; one count of attempted stealing of an automobile; and two counts of stealing by appropriation of a credit card. *See* § 565.081; § 575.150; § 569.080; § 570.030.3(3)(a) and § 564.011; § 570.030.3(3)(c).[1] On appeal, Defendant contends the trial court erred by: (1) permitting joinder of the two credit card counts with the other five charges; (2) not severing the two credit card counts; and (3) giving two erroneous jury instructions. This Court affirms.

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. On appeal, this Court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and rejects all contrary evidence and inferences. *State v. Newberry,* 157 S.W.3d 387, 390 (Mo.App.2005); *State v. Cravens,* 132 S.W.3d 919, 921 (Mo. App.2004). Viewed from that perspective, the favorable evidence supporting the State's case against Defendant is summarized below.

In January 2007, George Sarson, Jr. (Sarson) was employed by Hank's Fine Furniture in Joplin, Missouri. Sarson owned a 1993 Mitsubishi Montero. On Monday, January 29th, Sarson drove his Montero to work and parked it outside the business. He left his wallet, which contained his driver's license and Sears credit card, inside the vehicle. When he left work around 7:00 p.m., the Montero was gone.

In January 2007, Stephanie Hallet owned a white Ford Freestar van. On Tuesday, January 30th, she reported to police that the van had been stolen. The vehicle had been left at the Snodgrass Body Shop for repairs.

1. References to these statutes are to RSMo Cum.Supp. (2006), except for the reference to § 564.011, which is to RSMo (2000). All references to other statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2008).

In late January 2007, Ashley Erdman's purse was stolen from her vehicle. Her purse contained her wallet, identification, social security card, Visa card and checkbook.

On January 31, 2007, John Crandon owned a 1996 silver Mazda 626. That evening, Crandon was driving on Highway 171 during an ice storm. The Mazda ran off the road and got stuck in a ditch approximately one mile south of Asbury, Missouri. Crandon left his vehicle there and rode home with his father. The rear passenger window of the Mazda was intact when Crandon left.

Early on the morning of Thursday, February 1st, Sergeant Mike Bryan (Sgt. Bryan) of the Missouri State Highway Patrol (MSHP) traveled on Highway 171 to investigate a serious automobile accident one mile north of Asbury. On the way to the accident scene, Sgt. Bryan passed by Crandon's Mazda. It was down in the ditch on the west side of the road. The vehicle appeared to have been there most of the evening because it was almost completely covered with ice and snow. None of the Mazda's windows were damaged.

Sgt. Bryan remained at the accident scene for about two hours. He then drove south on Highway 171 toward Asbury. Around 11:00 a.m., Sgt. Bryan was three-quarters of a mile south of the Asbury city limits when he observed a white Ford Freestar van. This vehicle was parked in the southbound lanes, facing north, with its emergency flashers illuminated. Sgt. Bryan pulled up to the front of the van and activated the patrol car's emergency lights. The van had no front license plate. Crandon's Mazda was nearby, stuck in the ditch. Sgt. Bryan pulled around behind the van to see if there was a rear license plate. The rear hatch was up. The interior jack cover was missing, but none of the tires on the van were flat. Sgt. Bryan observed Defendant inside the Mazda, reaching from the back seat into the front seat. There was a tire iron in the front seat, and the CD player had been damaged in an effort to remove it from the dash.

When Sgt. Bryan walked toward the Mazda, Defendant exited the vehicle through the front passenger door. Sgt. Bryan asked who owned the Mazda, and Defendant said it belonged to a friend of his named Chris Carpenter. According to Defendant, Carpenter was at a convenience store in Asbury and had called a tow truck. Sgt. Bryan asked Defendant for identification, and he said it was in his van. When he turned, Sgt. Bryan saw the outline of a man's wallet in Defendant's right rear pocket and a checkbook sticking out of the top of the same pocket. Sgt. Bryan told Defendant to stop and hand over whatever identification was in the wallet. Defendant opened the wallet and gave the officer George Sarson's license. Sgt. Bryan noticed that Defendant did not match the description on the license. Sgt. Bryan also noticed that the Mazda's rear passenger window was broken out and mentioned this to Defendant. He fled.

Sgt. Bryan ordered Defendant to stop, but he did not comply. Defendant ran toward the driver's door on the van with Sgt. Bryan in pursuit. He tackled Defendant to keep him from entering the van, and both men landed in the ditch. Defendant escaped and took off running again, only to be tackled a second time by Sgt. Bryan. Defendant got away a second time and was able to get into the passenger side door of the van. As Defendant crawled across to the driver's seat, Sgt. Bryan went to the driver's side door and pulled out his baton. He broke the window so he could reach inside and unlock the driver's door. Defendant got the van into gear and "floored it." The van surged forward. Defendant grabbed the steering wheel and turned it toward Sgt. Bryan, who was

struck in the left side by the van. He was knocked about eight feet into the ditch. The van also entered the ditch and got stuck.

Defendant jumped out of the van and ran south along the centerline of the highway, trying to flag down northbound traffic. He approached a white van and tried to enter it, which caused the driver to speed away. The next vehicle was a Toyota driven by Rebecca May. When she stopped, Defendant opened the driver's door. He grabbed May's arm and tried to pull her out of her car. She was able to jerk loose and drive away. Defendant continued running, and Sgt. Bryan followed in his patrol car. Two tow truck operators arrived and joined in the pursuit. With their assistance, Sgt. Bryan was able to corner Defendant. He was finally subdued after receiving two bursts of pepper spray in his face.

After Defendant was arrested and placed in handcuffs, he was searched. In his back pocket, Sgt. Bryan found a wallet and a checkbook. Both items belonged to Ashley Erdman. The wallet contained her driver's license, social security card, a Commerce credit card, a Commerce debit card and a Buckle credit card bearing her name. The wallet also contained a Sears credit card belonging to George Sarson. Sgt. Bryan determined that the white Ford Freestar van was owned by Stephanie Hallet.

On Friday, February 2nd, Sarson's Montero was found behind the Snodgrass Body Shop. Sarson's driver's license and Sears credit card were returned to him by the MSHP. Sarson did not know Defendant and had not given him permission to possess Sarson's license or credit card. Thereafter, the MSHP returned the Ford Freestar van to Hallett and Erdman's belongings to her. Hallett did not know Defendant and had not given him permission to take the vehicle. Erdman did not know Defendant and had not given him permission to possess her credit card.

In an amended information, Defendant was charged with the following offenses:

Count I: The class A felony of first-degree assault on a law enforcement officer for attempting to kill or cause serious physical injury to Sgt. Bryan by striking him with a motor vehicle.

Count II: The class D felony of resisting Sgt. Bryan's efforts to arrest Defendant by using or threatening the use of physical force or violence.

Count III: the class C felony of first-degree tampering for knowingly operating Hallett's van without her consent.

Count IV: the class C felony of stealing a credit card by appropriating Erdman's credit card.

Count V: the class C felony of stealing a credit card by appropriating Sarson's credit card.

Count VI: the class D felony of attempted stealing of a motor vehicle for trying to pull May from her motor vehicle and take it.

Count VII: the class C felony of first-degree tampering for knowingly defacing Crandon's Mazda.

The amended information also alleged that Defendant was a prior offender with three felony convictions.

Defense counsel filed a motion to dismiss Counts IV, V and VI as improperly joined. Counsel filed another motion asking that all seven counts be severed and tried separately. The trial court overruled both motions. After a jury trial, Defendant was found guilty on all charges. This appeal followed.

### Point I

In Defendant's first point, he contends the trial court erred by failing to dismiss Counts IV and V. Defendant argues that

these two counts, which dealt with the appropriation of the credit cards belonging to Sarson and Erdman, were improperly joined with the remaining counts.

■ The joinder of criminal offenses is governed by § 545.140 and Rule 23.05. *State v. Love*, 293 S.W.3d 471, 475 (Mo. App.2009). In relevant part, the statute states:

> Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

§ 545.140.2. The rule similarly provides that:

> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Rule 23.05. "Because liberal joinder is favored for the sake of judicial economy, joinder is appropriate where any of the Section 545.140.2 or Rule 23.05 criteria exist." *Love*, 293 S.W.3d at 475–76. Whether offenses were properly joined is a question of law. *State v. Johnson*, 231 S.W.3d 870, 874 (Mo.App.2007). "The propriety of joinder is fact dependent." *State v. McQuary*, 173 S.W.3d 663, 670 (Mo.App. 2005). In determining whether there has been a misjoinder of offenses, only the State's evidence is considered. *State v. Holliday*, 231 S.W.3d 287, 293 (Mo.App. 2007); *State v. Saucy*, 164 S.W.3d 523, 528 (Mo.App.2005).

■ Both § 545.140.2 and Rule 23.05 authorize joinder of offenses based upon two or more acts or transactions that are connected. *See Johnson*, 231 S.W.3d at 874; *Saucy*, 164 S.W.3d at 528. Neither the statute nor the rule expressly define this criterion, so the ordinary, dictionary definition of "connected" is used. *State v. Bechhold*, 65 S.W.3d 591, 594–95 (Mo.App. 2002). Cases applying this criterion have defined "connected" to include things that are joined or linked together in a series or that have logically related parts or elements. *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998); *State v. Nichols*, 200 S.W.3d 115, 120 (Mo.App.2006); *Kansas City v. Streeter*, 26 S.W.3d 282, 283 (Mo. App.2000).

■ The evidence presented by the State established that the two credit card offenses were connected with the other five charged offenses. All seven offenses are connected in time because they involved a crime spree that took place over a period of about four days. The offenses were part of a continuous chain of criminal activity involving events that were linked together in a series and that had logically related parts or elements. Erdman's credit card, checkbook and other belongings were stolen from her vehicle in late January. Around that same time, Sarson's Montero was stolen from his place of employment. Sarson's wallet, containing his driver's license and Sears credit card, was inside the Montero. That vehicle was later found at the Snodgrass Body Shop. Hallet's Freestar van was stolen from the same body shop. Defendant obviously drove the van to the location where Crandon's Mazda was stuck in the ditch. The State's evidence supports the reasonable inference that Defendant used the van's tire iron to break out the Mazda's rear passenger window, gain entrance to that vehicle and attempt to steal the CD player.

Sgt. Bryan asked Defendant for identification, and he said it was in the van. As he turned to go to that vehicle, however, Sgt. Bryan saw a wallet and a checkbook in Defendant's back pocket. Both of these items belonged to Erdman. When Sgt. Bryan demanded that Defendant turn over any identification in the wallet, he gave the officer Sarson's license. After Sgt. Bryan noticed that Defendant did not match Sarson's description and commented on the new damage to the Mazda, Defendant fled. The State's evidence supports the reasonable inference that Sgt. Bryan's observation of Erdman's belongings in Defendant's rear pocket and the discovery of Sarson's license played a significant role in Defendant's near-immediate decision to flee. The other four charged offenses directly stemmed from Defendant's attempt to escape arrest. Thus, all seven offenses are connected by their dependence on, and relationship to, one another. Because the charged crimes are connected within the meaning of § 545.140.2 and Rule 23.05, they were properly joined. *See, e.g., Morrow*, 968 S.W.2d at 109 (holding that charges of murder, robbery, stealing a car and stealing a purse were all sufficiently connected that joinder was proper); *Nichols*, 200 S.W.3d at 119–20 (joinder of three burglary charges with charges for distributing methamphetamine and resisting arrest was proper because the defendant was involved in a continuous chain of criminal activity; the burglaries led to the sale of contraband and drugs, which directly led to defendant's arrest); *Bechhold*, 65 S.W.3d at 594–95 (holding that charges for attempting to manufacture methamphetamine and tampering with a motor vehicle were properly joined because the car was used to transport items to an apartment where the methamphetamine was cooked). The trial court did not err in failing to dismiss Counts IV and V as improperly joined. Point I is denied.

## Point II

In Defendant's second point, he contends the trial court erred by failing to sever Counts IV and V. Defendant argues that he was prejudiced by the court's ruling because the jury was allowed to consider the evidence relating to these two credit card offenses as improper propensity evidence.

The severance of criminal offenses is governed by § 545.885 and Rule 24.07. *State v. Love*, 293 S.W.3d 471, 476 (Mo. App.2009). In relevant part, the statute states:

> If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, "substantial prejudice" shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

§ 545.885.2. The rule similarly states:

> When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:
>
> (a) A party files a written motion requesting a separate trial of the offense;
>
> (b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and
>
> (c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

Rule 24.07. Thus, both statute and rule require a party to make "a particularized showing of substantial prejudice" in order to obtain a severance. Insofar as relevant here, Defendant's motion alleged that "[e]vidence in a case involving one set of circumstances would not be admissible in a separate trial of another set of counts." The trial court decided that no separate trial was required for the two credit card offenses. We review that decision for abuse of discretion. *State v. Morrow,* 968 S.W.2d 100, 109–10 (Mo. banc 1998); *State v. Wright,* 862 S.W.2d 488, 491 (Mo.App. 1993).

When an appellate court considers whether a trial court's failure to sever an offense resulted in actual prejudice to a defendant, "the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence offered, and whether the trier of fact could realistically distinguish the evidence or apply the law to each offense." *Love,* 293 S.W.3d at 477. As this Court stated in *State v. Johnson,* 753 S.W.2d 576 (Mo.App.1988), "the mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one does not call for severance." *Id.* at 586. In the case at bar, Defendant makes no claim on appeal that trying the other five charges at one time would cause him substantial prejudice. We also note that the evidence relating to the credit card offenses was simple, straightforward, distinct and uncontradicted. Under these circumstances, we fail to see how trying the two credit card offenses with the other five offenses caused any actual prejudice to Defendant. *See Wright,* 862 S.W.2d at 491; *Love,* 293 S.W.3d at 477–78.

We find no merit to Defendant's contention that the failure to sever the credit card offenses allowed the jury to consider improper propensity evidence.

"Severance of jointly charged offenses is not mandated merely because evidence relating to one count would not be admissible in the trial of a second count if the two were tried separately." *State v. Conley,* 873 S.W.2d 233, 238 (Mo. banc 1994). "[E]ven where the evidence would not be admissible if the charges are tried separately, any prejudice may be overcome where the evidence with regard to each crime is sufficiently simple and distinct to mitigate the risks of joinder." *Id.* at 238. Here, the evidence relating to the two credit card offenses was sufficiently simple and distinct to mitigate any risk of prejudice resulting from the trial of these two offenses with the other five counts. *See, e.g., State v. Simmons,* 270 S.W.3d 523, 529 (Mo.App.2008). In addition, the jurors were instructed that Defendant was "charged with a separate offense in each of the seven counts submitted to you. Each count must be considered separately." The jury was given a separate verdict-directing instruction and verdict form for each offense. This is an additional fact which tends to mitigate any possible prejudice from the joinder of the two credit card offenses with the other charges. *State v. Johnson,* 231 S.W.3d 870, 875 (Mo. App.2007). The trial court did not abuse its discretion in denying Defendant's motion to sever Counts IV and V for separate trials. Point II is denied.

*Point III*

In Defendant's third point, he contends the trial court erred in giving Instructions 13 and 15, which submitted the two credit card offenses to the jury. In relevant part, Instruction No. 13 stated:

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 1, 2007 County of Jasper, State of Missouri, the

defendant concealed a Commerce Bank credit card, property owned by Ashley Erdman, and

Second, that defendant did so without the consent of Ashley Erdman, and

Third, that defendant did so for the purpose of withholding it from the owner permanently, and

Fourth, that the property concealed was a credit card,

then you will find defendant guilty under Count IV of stealing. However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. 15 submitted the same propositions, but it referred to George Sarson as the property owner and a Sears credit card as the property concealed. Instructions 13 and 15 were based upon MAI–CR 3d 324.02.1. In paragraph First of this pattern instruction, the permissible choices include "(took)" and "(concealed)". In paragraph Fourth, the permissible choices include "(taken)" and "(concealed)". MAI–CR 3d 324.02.1. Defendant argues that Instruction No. 13 and Instruction No. 15 were erroneous because each one used the word "concealed" instead of "took" or "taken" in paragraphs First and Fourth. Defendant claims that the use of the word "concealed" lowered the State's burden of proof on these two stealing charges. According to Defendant, he exercised dominion over the credit cards by taking them, so some variant of "took" had to be used in the verdict-directing instructions. This Court disagrees.

■ Counts IV and V charged Defendant with stealing a credit card in violation of § 570.030. In relevant part, this statute states that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. As used in this subsection of the statute, "appropriates" means "to take, obtain, use, transfer, conceal or retain possession of[.]" § 570.010(2). Thus, exercising control over property by any one of these five means with the requisite intent constitutes a prohibited appropriation. *Walker v. State*, 232 S.W.3d 586, 589–90 (Mo.App. 2007); *State v. Eby*, 629 S.W.2d 515, 519 (Mo.App.1981).

■ In the case at bar, the State presented evidence that Defendant had Sarson's Sears credit card and Erdman's Commerce Bank credit card in a wallet in his back pocket. Both credit cards were "concealed" as used in § 570.010(2) because they were hidden from view inside the wallet and were not discovered until after Defendant's arrest. Sarson and Erdman testified that they did not know Defendant or give him permission to possess their credit cards. This evidence was sufficient to show that Defendant committed the offense of stealing, in violation of § 570.030.1, because he appropriated the credit cards with the purpose to deprive the victims thereof without their consent. We believe this interpretation of the statute is particularly applicable in the case at bar. The full extent of the harm resulting from the stealing of a credit card does not occur upon the initial taking because the card itself has no intrinsic value. It is the use of the credit card for unauthorized purchases that typically harms the cardholder. Concealment of a credit card provides the thief with a continuing opportunity to make illicit use of the credit card by preventing the discovery and confiscation of the card. The word "concealed" was one of the permissible choices in MAI–CR 3d 324.02.1, and that choice was supported by the evidence presented at trial. Therefore, the trial court did not err in giving

Instruction No. 13 or Instruction No. 15. Point III is denied.

The trial court's judgment is affirmed.

BARNEY and BURRELL, JJ., concur.